Our first case is 5-24-0665, Mid-Versa City of Collinsville. Appellant, if you are ready, you may proceed. Good morning. May it please the Court, Your Honors, Counsel. As you are aware, this case deals with whether or not a fee charged by the city is rationally related to the purpose of the fee and whether or not it violates substantive due process rights of the individuals who are arrested and charged with this fee. Plaintiffs have, throughout the life of this case, argued that the fee is not rationally related to the intended purpose of the ordinance. Excuse me. With respect to the rational relationship, a facial challenge, which is what the plaintiffs have alleged in this case, is the cost that the city is recouping or recovering must have a legitimate legislative purpose and bear a rational relationship to the actual cost it's intended to recoup. The court based its ruling in part on Leahy v. City of Carbondale, and the city argues that at length as well in their brief. The court there, after a trial, found for the city in that particular case. And because of that, the city argues that this court should rule in their favor as well. The problem with this position is twofold. One, the cases are factually different, very distinguishable. And secondly, the court in Leahy was not addressing a motion to dismiss. The court was addressing, well, the court held a trial on the case. Evidence was presented, testimony was heard, witnesses were sworn, cross-examination held, and the court then rendered its decision. Was there even a constitutional challenge in that case? I'm sorry? Was there even a constitutional challenge in that in Carbondale? No. Okay. No. So that would be, I guess, the third issue with the position I believe that the city has taken here. The city also in this section argues that because there was an affidavit. Excuse me. Apologies are bad. The city argues that because of an affidavit filed by a police officer from the city of Collinsville, that's undisputed factual evidence that the fees charged are reasonable. However, this court back in 2015 decided in Carter Reef City of Alton et al., rational basis test is differential, but not differential enough to allow a court to assume that a fee is a reasonable approximation of actual costs because the city made an implicit finding of that. There was no evidentiary hearing here. There was no testimony taken. There was no exhibits presented as far as besides this one affidavit, and there was no ability for plaintiffs to cross-examine that or challenge that. The plain language of this ordinance states that the purpose of the ordinance is for the recovery of fees incurred for towing and impounding of vehicles. When someone is arrested for the offenses listed in that ordinance, they're on common law pages 807 and 808. According to the court in Hendricks, which is cited in my brief, the court found that language is clear and unambiguous. Now, granted, that dealt with the statute, but statutory interpretation, ordinance interpretation, follows the same rules. If a language is clear and unambiguous, it must be applied as written without resorting to further aids of statutory interpretation. Here, the ordinance states that its purpose is to solely recoup costs for seizure, removal, and impoundment of vehicles. Nowhere, as the city and the trial court cited Leahy, does it state that it's for investigation, arrest, and detention of an offender, or removal, impoundment, storage, and release, since the city does not incur fees for those services. Here, the language is clear and unambiguous. It's for towing, impoundment, seizure, removal, and impoundment of vehicles. If the city's intent was to recoup costs for arrest, detainment, investigation, etc., it would have been noted in the ordinance. It also should be noted that what the officer does at an arrest during these types of stops, or for an arrest for any type of misdemeanor or felony, they're paid by taxpayers. Taxpayers pay for their services. This fee is in addition to what the officers are already paid and goes to the city. The trial court here decided that they would add language to the ordinance's plain meaning and resort to further aids of interpretation, facts outside the complaint, to fit their narrative that the intention is different than the language used. This flies in the face of Hendricks. Further, the court in Carter, with respect to this issue, found that plaintiffs were not required to prove their case to survive a motion to dismiss. In fact, the court found that the fact that the cities in those four cases, as you recall, those were all argued together, the fact that the cities all disputed the plaintiffs' allegations and had some evidence to support their defense did not mean that dismissal at the pleading stage was warranted. The same holds true here. It also should be noted that the trial court didn't address at all, and the city barely addressed the fact that the city does not impose fees for similar offenses. And I'm just going to read you a couple of offenses listed in the ordinance that the fee applies to. Aggravated assault, aggravated battery, robbery, armed robbery, burglary, manufacturing or delivering of unauthorized controlled substances, trafficking of controlled substances. If there is a vehicle involved in the arrest, they are charged this fee. If they are at home and they are arrested for any one of those offenses, I guess if they're at home, burglary wouldn't apply, but if they are at home and there is an allegation of assault of a child, they are not charged the same fee as if they were in their vehicle when that occurrence had happened. If the intent of the ordinance was to recoup or recover costs for detaining, arresting, and processing individuals, and incident to the arrests cited in the ordinance, that ordinance would extend to those individuals arrested for those identical offenses without a vehicle involved. In Carter, the court stated that, and I quote, many of the costs the defendants point to are incurred handling any arrest. Police officers must process evidence, investigate cases, and book defendants into the county jail whether or not a vehicle is involved. Yet the ordinance charges a fee to recoup these costs only if a vehicle is impounded. And that charging such fees merely because a vehicle is used with an offense is arbitrary unless there is some reason to treat those offenses differently than those same offenses when a vehicle is not used. The city has failed to set forth how this ordinance should be upheld when it treats individuals differently and arbitrarily than those who are arrested for that identical charge but just did not have possession of a vehicle or were not in a vehicle or around a vehicle when that incident or when that arrest happened. There's no rational basis to impose fees on persons who commit offenses just because they have a vehicle and not charge it to those people who commit the offenses when they do have a vehicle. Finally, with respect to this argument, by adding their own interpretation to the ordinance, the city and the trial court did not take the facts of this case on its face and in the light most favorable to plaintiffs as was required by a motion to dismiss. The city next argues that 5-11-208.7 of the Vehicle Code controls. That statute was enacted after the initial petition in this case was filed. And it controls non-home real estate. The city is a home real city, so the Carter court, this was argued in 2015 as well, the Carter court found that it's not controlling and was not persuaded by the city's argument that the language in that controls why the fee in this case is reasonable. Moving on to the city's argument that this is a violation, that this is not a violation of substantive due process, the trial court found that plaintiff's substantive due process claim is defeated because adequate remedies were available to all the plaintiffs arrested under this ordinance. I'm sorry, arrested for the offense and charged the fee under this ordinance. And plaintiffs simply chose not to pursue those remedies. This was also addressed in Carter. And I'm going to quote again. The Carter court found that the only affirmative matter asserted in the motions to dismiss was an allegation that plaintiffs had failed to exhaust their administrative remedies before challenging the validity of the ordinances. Because the plaintiffs clarified that they were challenging the ordinances on their face, they are not required to do so. The same holds true 10 years later. Most importantly, I think, is that the ordinance's own language supports plaintiff's argument. The ordinance states that the only issue that may be addressed at an administrative hearing is basically a probable cause hearing. Whether or not a violation of the chapter occurred and whether the officer had the grounds to impound the vehicle does not provide any type of challenge as to whether the individual's substantive due process rights were violated. The city next argues that the voluntary payment doctrine controls and the case should be dismissed based on that. Each plaintiff in these cases had their vehicle taken from them by the city, technically by the towing company, and they could not retrieve that vehicle until they went to the city and paid the city the administrative fee under the ordinance. They took the receipt that they were given to the tow yard and paid for the towing and impoundment of the vehicle. Potek v. City of Chicago found that a payment is made under duress when the payee, quote, In this particular case, that exact thing is true. There's no real choice. Otherwise, the plaintiff's vehicle is sitting in the tow yard incurring day-to-day fees. The administrative relief, if one wants to call it that, to challenge whether or not they had probable cause to detain the vehicle under that arrest takes 30 to 45 days. I believe in this ordinance it's a 45-day the plaintiff has to file for a hearing, an administrative hearing. Those charges are being incurred every single day. The plaintiff cannot have his vehicle back. They can't file for that, get their vehicle, and then pay later if they lose the administrative argument. The city cites, and as did the courts, I think it's SCOA Industries v. Howlett, the problem with that argument is the plaintiffs here, the plaintiffs there weren't forced to pay that particular fee. But here they're forced to pay the fee to retrieve their vehicle. Otherwise, their vehicle sits in impound. Finally, the city makes much, as did the trial court, about the petition to amend the complaint for the third amended complaint as well as the petition to amend class certification filed, I believe it was in 2022, for the third amended complaint. That plaintiff's counsel excluded persons which would then defeat the class. That argument, well, first of all, the argument I believe is invalid because on May 26, 2023, the trial court entered an order specifically identifying the class as plaintiff's counsel delineated in their motion to amend class certification and granted the new class as well as granting the third amended complaint. Plaintiffs could have chosen any number of ways to delineate their class. There's no authority cited by the city or the trial court that says that plaintiffs have to structure their class a certain way. But let me stop you there, Counsel. Wouldn't the structure of that class, though, couldn't that impact the facial challenge? Do you agree? In this case, no. But, yes, I would agree in theory that structuring a class could impact parts of it. Yes, to answer your question, but not in this case. And why not in this case? Because in this case there are several components to all of these arrests. There are arrests, like I indicated earlier, battery, assault. Plaintiff's counsel could have chosen to attempt to certify his class for moving violations, driving while suspended, revoked, DUI, things like that. He could have then had another class of individuals that were assaults, batteries, you know, things like that, another class with several others of those. Classes can be then a plaintiff can structure that and make three different classes. Trial courts have made subclasses, which I cited some case law in the brief, that the trial court could have said, okay, instead of amending this class, I'm going to make two subclasses. I could find no authority that said that the plaintiffs were required to do this, as the city is saying has to be done. One other question. This Lehigh v. Carbondale case, though, there was a constitutional challenge in that case, correct? I did not think so. That was a trial, and there was a trial on the issues, and there was an appeal then from the trial court's decision. But didn't Lehigh have multiple issues that were raised and wasn't one of them the constitutionality? Yes, but I believe that the decision, and I believe the decision was not on the constitutional issue. Okay. I see my time is up. If there are no other questions. Thank you. May it please the Court, Justices, Counsel. My name is Steve Giacolotto, and I represent the Belize City of Collinsville. The plaintiff's core argument is that the city ordinance does not allow administrative fees for anything but issuing a receipt by the deputy clerk or somebody at the police department. And it's only the receipt because even though the ordinance has certain language in it, the plaintiff's argument is that the city does not actually tow or impound the vehicles. At least that's the way they argued it in the briefs. But I think when you read that old ordinance 4464, I think it's hard to read that entire ordinance in the context and think that the only thing that the city is trying to recover a fee for is issuing a receipt. And that's just an unreasonably restrictive reading of that ordinance being proposed by the plaintiff. And that argument asks this court to unnecessarily give an absurd interpretation as a result of that ordinance. And there's a slew of case law that says that courts should strive to not do that, not to make legislation absurd. Conversely, though, there's no law that justifies the limited reading proposed by the plaintiff in this case. There's no cases cited as examples from anywhere in Illinois or even the entire country to give an example of how and why this ordinance should be limited or any ordinance should be limited. True, the Carbondale, the Leahy-Carbondale case had a more descriptive ordinance, had some language that mirrored the state statute. But there was nothing in that decision that said, oh, that's the minimum threshold that we need, is to have those magical words out of the state statute. That was never the ruling in the Leahy-Carbondale case. And yes, there was a rational basis test constitutional challenge in the Leahy-Carbondale case. So let's talk about the ordinance in a little more detail. The plaintiff seems to want to ignore specific words and the overall context of the ordinance. So when I mean specific words, when you look at them in the ordinance, you have the preamble. And the preamble cites the state statute 11-208.7, and that's the statute that basically is the model statute for the impounding and towing and this administrative fee by all of these municipalities doing this. So the ordinance alone references the state statute and gives deference to it. The ordinance talks about processes associated. It talks about, it has references to impoundment of private motor vehicles, to recover the expenditure of resources, police personnel time, towed impoundment, and then it goes on to seizure and impoundment, seizure and impoundment all throughout it. All those words are in the ordinance. Those words are very similar, not in the exact same ordinance as the model statute, but very similar to see what you have in the state statute. What is not in the ordinance and is in the state statute is arrest. You don't see that in the storage also. I think the statute calls for storage, and we don't store the vehicles ourselves. Some cities do, perhaps Chicago, I guess. The other phrase in the statute or the word, removal equals towing, and that's what the city does. I want to talk a little bit about towing and impoundment and how the city doesn't do that. Towing and impoundment is a police action. If it's not done by the city police department, then who is it done by? It's not realistic to say that, oh, it's the towing company that is responsible for the towing and impoundment of these vehicles. Private towing companies have no authority to take cars off the street and tow and impound them. That's definitely a police action. The police action, the part of towing and impoundment, and this was covered by an affidavit by Trent Ross, one of the city police officers, a DUI guru. His resume is in the file in the record, and he's the guy that knows all about the time and expense involved in towing and impounding of vehicles, DUIs, et cetera, et cetera. His unrefuted affidavit is part of the record. But all of that, towing and impoundment requires observation of the vehicle, investigation behind the scenes, probable cause, stop or detention of a suspect, not necessarily even arrest, determining the vehicle ownership, securing the scene around the vehicle, dealing with the other persons in the vehicle, inventory of the vehicle. Not everybody keeps a clean car. You think that they'll jump into my car to clean, but a lot of people it's not the case. Arranging for and waiting for the towing truck, towing company, safekeeping of the vehicle and the property, notification to owners. All that comes into play also is the cooperation of the suspect, whether the suspect is aggressive or not, illness of the suspect, cleaning of the roadway, securing of the entire area. Sometimes you do get involved with canines, even though there's not necessarily arrest, or even the drug recognition officer, expert, that's all in the record as well. Even though there may not be arrest, those are sometimes involved. So the actual work behind the phrases seizure, towing, and impoundment is a lot more entailed than just simply calling somebody on the phone and saying, come and get this vehicle. All of that requires a lot of police personnel time, which is accounted for in the briefings. So it's not accurate to suggest that the city, because they don't have a tow company, that they're not spending a lot of time on these. And I have cited in my brief, again, driving home the point that towing is a police action. I do have those state statutes cited in the brief on page 26 that only the police can tow and not private individuals. So, you know, the ordinance is not exactly the same language as the statute or exactly as the Carbondale. So maybe the court might be inclined to say, well, you know, Collinsville, you're going to be limited to recovering your personnel time associated with the seizure, towing, and impounding of vehicles and that sort of thing. And if it is limited, I can live with that. That's fine. You're only really taking out arrest and maybe one other thing. Because just as I covered a lot of those costs and fees regarding seizure, towing, and impounding, I related all of those in great detail in a memorandum for summary judgment in this case, which was referred to and cited by the trial judge. But let me stop you there, Counsel. You mentioned the Lehigh case as well, and you said, and maybe I'm pronouncing that wrong, but you said that there was a rational basis test in there. But that case was decided after trial, correct?  And the things that you're discussing now are fact-based issues in some respects.  This was decided on a motion to dismiss, correct? It is, yes, correct. Yeah. So address, if you could, address the court's ruling on the motion to dismiss. So when I decided, and so I haven't, because I was coming to that point anyway, I'm going to jump ahead. So I have in the memorandum the motion to summary judgment, and the judge did refer to it, cited from it, and took it into account. And all that is cited in my brief, allowed by statutes and rules and is acceptable, that they're entitled to look at the entire record, and so is this court. And in that summary judgment, it is backed up with a lot of affidavits, depositions. I was the lawyer in the Carbondale case, so I knew exactly kind of the roadmap being created by the evidence in that. And I tailored these affidavits exactly for that, to where I did have the arresting officer, the police chief. I had the DUI guru, as I call it, the guy that knows all about this sort of stuff. And they broke down the details of it, and how much time were expended as a minimum, a maximum, an average case on these things, whether it involved a DUI or without a DUI. And then I also had the chief financial officer. You know, that was an important part in that earlier case in Carbondale. The chief financial officer detailed not just the hourly expenses involved here of somebody's pay rate, but also the insurance involved, the social security, the tax of withholding, the health benefits. All that is involved in the total cost of it. And you start out with a number that's $40 an hour, and by the time you're done with it, you're talking $65 an hour. My point being is all this is backed up by affidavits, and none of that went challenged. I should say the factual part of it never went challenged. There was no depositions, nothing to counter those affidavits with the court. The plaintiff took the position of none of that really matters because the point of this is that your ordinance doesn't allow for anything. Your ordinance is just issuing a receipt. And so all that time expended for investigation or recovery, all the time expended in trying to recover your time in a tow and impound case is irrelevant because your ordinance doesn't account for that, when clearly I think what I've just talked about, the ordinance, and what I've briefed heavily on, the ordinance allows a lot more than just receipts. So none of those factual evidence was, you know, that was a gamble the plaintiff took, I think, and should have perhaps fought more on the factual evidence instead of just relying more on a legal argument. So I don't know if I answered your question in the wrong sort of way, but... Go back, go back. You know, I'm changing gears and going back to the ordinance again. Ordinances may have more or less language than the state statute that's modeled after. It just cannot be in conflict with it. And I've cited a case in my brief, Shuler-Strohm-Holmes case, that says an ordinance is not limited if it's silent on the matter. In the Latin phrase it's used, it does not apply. It's sub silenco, it's something about basically the silence does not apply, the ordinance complements the statute, and the statute fills in the gap wherever the ordinance is short. That's the Shuler-Strohm-Holmes case. Also, the Nickell-White case I've cited in my brief, flat out said when there is concurrent jurisdiction between city ordinances and state statutes, the ordinance is not required to be identical to the state statute that it's modeled upon. So you ask, well, is this concurrent jurisdiction? And just as the Supreme Court comes out in the Linceras v. Chicago case, also in my brief, they go extensively about these home-rule municipalities having concurrent jurisdiction over the vehicle coupled along with the state statute. So my point on all this is between the reading of those cases is my ordinance does not have to have the exact same language as the state statute to be modeled after it, to be implied in the same intent of the state statute. So long as it relates to it, it's bound and benefitted by the words of that statute. That includes the entire phrasing of the statutes. You know, I don't think the word receipt is even in my ordinance, but there's a lot of ordinances out there that you've already dealt with, or at least this Court has dealt with. You have Collinsville, Granite City is coming up next, Alton, Edwardsville, O'Fallon has been here, Fairview Heights, Carbondale has been here. There's actually a lot of other cities that have these ordinances and just haven't been approved. to the appellate court level. And all these ordinances, they read very similar. When you look at them, they have very similar language in them. And I think it's hard for me to visualize that, oh, some of these cities intended to only charge a $500 fee or $100.50 fee for a receipt, whereas all the other ones that had a few more magical words in them, oh, they were actually, you know, trying to recover everything under the statute. I don't know. I think at least the Court is in a tough position to draw a fine line on what kind of what these ordinances are going to pass must and which not over a few magical words. Again, I go with mine. I have a lot of the same language that's just in the statute. I even refer to the statute in the ordinance. It's just not in the same exact phrase, in the same order of the words. So I think Collinsville is going to be clear on that. I did talk about motion for summary judgment. A couple of things I talked about. There was a constitutional challenge. Collinsville briefly talked about there being a duplication of fees with the salary or something to that effect. That has not been an issue in this case whatsoever. It's not been briefed. It was an issue in the Lehigh-Carbondale case, and the Court rejected that whole matter. So anyway, that's really not an issue in this case and hasn't been. I did talk about decertification in my brief. My point is that I'm not here to challenge decertification or anything like that, but I do think it is evidence. I do think when you look at how that definition of the class now was amended to read, you know, where they're trying to cut out personnel time involving a personal injury crash, that has nothing to do with the DUI or anything like that. Persons charged with felony offenses or accident reconstructions, those are all a lot of time involved with the city. I only use it as evidence showing that there are circumstances out there that the ordinance would be constitutional, too. And if there's just one person that the ordinance is constitutional for, then the facial challenge fails. So also, you know, there was some discussion about the list of events where a vehicle is not used. I don't contest that at all. There's a lot. When you look at the City of Council ordinance, ever since the Carter v. Alton ruling, I have no problem with the vehicle needing to be unique to the charge or to the infraction. You know, you have to have a vehicle to drive with your license suspended or revoked. To flee or elude a police officer with your vehicle, you have to have a vehicle. Driving under the influence, you have to have a vehicle. Reckless driving, you have to have a vehicle. Drag racing, you have to have a vehicle. A lot of the other ones, though, aggravated assault, robbery, armed robbery, those are non-factors in this case. I mean, those are not even part of the class definition. So I agree that those would not be pardoned, would not be chargable offenses under this ordinance. No fee is going to be collected for those. So I think that's a rabbit hole that doesn't exist in this case. So, let's see, do we have any questions? No questions. In conclusion, we'd ask that the courts affirm the decision of the trial court and dismiss in its entirety the complaint at the lower court level. Thank you. Thank you. First and foremost, counsel started with arguing about the fee, whether this was a fee for a receipt. Yes, that has been briefed. So in, I believe, all of my eight briefs regarding the fact that when an individual is charged for an offense and this ordinance kicks in, whatever they're arrested for, they do go to the city of Collinsville or any of the other municipalities, and they pay the $300, $400, $500 fee. Once that fee is paid, they get a receipt from the clerk at the city, and they take that receipt to the tow yard. They can't go to the tow yard without that receipt. They can't. So there is, in fact, no, the receipt, there's not the word receipt. At least I don't, I believe Mr. Giacletto is correct. There's no receipt in this ordinance. But that is what these individuals are taking to the tow yard in order to get their car. If they were just to go straight to the tow yard to get their car, that car is impounded under this ordinance, and they have to have that receipt from the city saying they have paid that $300 to $500. With respect to the fact that the language, well, from what his argument was, is, again, as set forth in my brief, he wants you to interpret all these other things that are in this ordinance. He wants you to go beyond the scope of what the ordinance's plain language means. In doing so, if the court does that, and what the trial court actually did is basically said, I don't care what the plain language is, I can read this, and I'm going to just interpret that they actually meant that this goes for A, B, C, and D, not just the towing and removal and impoundment of the vehicles. And if that is considered splitting hairs, that this should have been interpreted by the trial court, and as for all of those other services that the city does offer. And I'm going to jump back. I take exception that the city is, what did he say? It's a police activity to tow the car. The city contracts a private towing company. The city does not have a tow company or tow vehicles. They're not officers that go out there and tow the vehicle to the impound lot. And as he indicated, the city doesn't have a tow yard. So they are towed and stored in a private lot. But with respect to that language, stopping, Mr. Giacletta went through all of the things, that it's not just towing, it's police activity for stopping, securing the scene, investigating, waiting, notifying owners, cooperation of the vehicle owner. With the exception of the notification of vehicle owner, all of those services are done in any arrest under this ordinance that doesn't violate, I'm sorry, that doesn't involve a vehicle. Mr. Giacletta read several of the offenses that do involve vehicles. The problem is there are so many other offenses in this ordinance that don't have to involve a vehicle. An individual can be arrested. The same stopping, securing the scene, investigating, waiting for backup, whatever securing of a scene might be, for instance, like I indicated previously, if you're in a house, or if it's an armed robbery at a gas station, and the person walked to the gas station and rode their bike, which there's been cases like that where someone's charged of riding their bike to the gas station. Those individuals are not charged the $500. However, if that individual goes in and robs the gas station and he drove there, then he's charged that $500 impound fee. The same securing of the scene, the same investigation occurs whether there's a vehicle or not in those particular offenses. So this ordinance, as the Carter Court found or pointed out, is arbitrary because it's not the same for every individual arrested for those offenses. With respect to the ordinance doesn't have to mirror the statute. I agree with that. It does not have to mirror the statute. However, the Carter Court again addressed this issue and stated that the statute doesn't, and this is at paragraph 44 of the opinion, the statute does not purport to draw a line between what is reasonable and what is not reasonable. Moreover, the legislature cannot grant the authority to any municipality to charge a fee that does not comport with the requirements of substantive due process. The statute just outlines what is required. The ordinance sets forth what the purpose of that ordinance is. The statute just requires that this ordinance conform to substantive due process. And finally, with respect to the argument that all of the cited things that the police officers do that should have been brought up in a motion to dismiss, those are, as Justice Scholar pointed out, those are things that would come out at trial. Those are all things that are factual issues that are not addressed typically in a motion to dismiss. Where there is no evidence presented, it was just merely the arguments of counsel. Thank you. All right. Thank you, Counsel. We will take this matter under advisement and issue a ruling in due course.